Donald R. FRANCOIS,
Petitioner-Respondent,

v.

Eva M. FRANCOIS, Joint
Petitioner-Appellant.

No. 41779.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 27, 1981.

Lester H. Goldman, St. Ann, for joint petitioner-appellant.

Melvin D. Benitz, St. Charles, for petitioner-respondent.

SNYDER, Judge.

In this action appellant-wife appeals the denial of a motion for a writ of error coram nobis sought to set aside the decree dissolving her marriage to respondent-husband. The dissolution decree was issued on March 14, 1975. The motion was filed on May 11, 1978. The wife asserts that the trial court erred in not granting the writ because the evidence established that the husband committed fraud in the procurement of the dissolution by concealing the pendency of the dissolution hearing from her and by concealing her mental and physical condition from the trial court. In her second point relied on the wife argues that the trial court's failure to award her attorney fees was against the weight of the evidence and an abuse of discretion in view of the relative financial positions of the parties. Both points are ruled in favor of the husband and the judgment is affirmed.

The parties were married on May 21, 1955 when the wife was 17. Their daughters were born in 1956 and 1959. At the age of 18 the wife developed diabetes for which she has been under medical care. She has not worked outside the home since 1965.

The wife testified that she became despondent over her husband's extramarital relationship and problems at home. She attempted suicide in October of 1974 by taking an overdose of insulin, was hospitalized for three weeks, and treated for diabetes and depression. She remained under psychiatric care through January of 1975. Her psychiatrist, Dr. Leonard J. Wiedershine, characterized her mental condition in November as "depressive reaction." He testified that in his opinion she would have been capable of understanding documents. He did not express an opinion on her ability to understand from December 1974 through March 1975. Appellant's last visit to Dr. Wiedershine in 1975 was on January 4.

Appellant was not individually represented in the dissolution action. The separation agreement and joint petition for divorce were drawn up by the husband's present attorney who agreed to represent both parties since there was no dispute over proper-

ty. The agreement gave primary custody of the daughters, then 18 and 15, to the wife and awarded support payments of $268 per month to majority. The agreement provided that when both daughters reached majority the family home would be sold and the proceeds divided between the parties. Thereafter the husband was to pay $200 per month contractual maintenance to the wife. The petition and separation agreement were signed December 26, 1974.

Both parties testified that reconciliation was discussed after December 26, 1974. The wife said that after she went to see an attorney on January 25, 1975 the husband told her by phone that he was not thinking of a divorce and had asked his attorney to drop the proceedings. She said she "assumed" they were not being divorced because "at times he was getting a divorce and then again he wasn't," and that about two days before the dissolution hearing the husband told her he was not sure he would ever get a divorce. The husband testified that they had discussions but that he did not think he had ever told her that he would stop the proceedings.

The petition was heard March 14, 1975. The wife was not present. The husband testified that the marriage was irretrievably broken but was not asked and did not testify about his wife's physical and emotional condition. The trial court decreed that the marriage was irretrievably broken, the separation agreement was not unconscionable, and awarded custody and child support to the wife, but no statutory maintenance. The separation agreement was not made a part of the decree.

The wife testified she first learned of the dissolution the evening of March 14, 1975 when her husband returned home to obtain the rest of his belongings and told her that they were divorced. She stated that she

pretended that everything was the same for a year or longer because she "couldn't deal with any reality of it." Appellant filed her motion for writ of error coram nobis May 11, 1978. It was heard May 22, 1979 and denied May 25, 1979.

■ A petition or motion for writ of error coram nobis raises the issue whether there was a mistake of fact in the trial court which, if known, would have deprived the court of jurisdiction to enter judgment. *City of St. Louis v. Franklin Bank*, 351 Mo. 688, 173 S.W.2d 837, 846[13–15] (banc 1943).[1] An independent suit in equity is the appropriate vehicle for relief from extrinsic fraud. However, this court has ruled on the merits of extrinsic fraud issues not affecting jurisdiction when reviewing petitions for writs of error coram nobis where procedural unfairness would not result. *Koeller v. Koeller*, 589 S.W.2d 620, 622[1, 2] (Mo.App.1979); *Martin v. Martin*, 549 S.W.2d 542 (Mo.App.1977). Inasmuch as respondent has not complained that coram nobis is not the proper method of attack on the judgment, the issue raised by appellant will be considered on its merits as if raised in an independent proceeding in equity.

■ The first fraud alleged by appellant is respondent's leading her to believe he was no longer seeking a divorce. She asserts that her lack of knowledge of the hearing due to this deception prevented her from appearing and having her day in court.

The record shows no action taken by appellant until the filing of this motion. Appellant joined in the petition for dissolution (by her signature) and then waited over three years before filing this motion although she knew of the divorce on the day of the hearing. Laches alone would make appellate intervention based on this allegation unwarranted. *Zahorsky v. Zahorsky*,

1. Although Missouri cases have allowed judgments in divorce or dissolution actions to be attacked by petitions or motions for writ of error coram nobis (*Koeller v. Koeller*, 589 S.W.2d 620 (Mo.App.1978); *Daffin v. Daffin*, 567 S.W.2d 672 (Mo.App.1978); *Martin v. Martin*, 549 S.W.2d 542 (Mo.App.1977); *Pike v. Pike*, 239 Mo.App. 655, 193 S.W.2d 637 (1946)), there is encyclopedia law to the effect that coram nobis is an inappropriate method of seeking review. "Since the writ of error coram nobis, is a common-law writ, it is inappropriate in chancery proceedings. A divorce decree cannot be reviewed by writ of error coram nobis. [Footnotes omitted.]" 49 C.J.S. Judgments § 312a, page 563.

543 S.W.2d 258 (Mo.App.1976); *Pike v. Pike*, 239 Mo.App. 655, 193 S.W.2d 637 (1946).

Appellant was given a full hearing on the motion in the court below. Her burden was to show fraud " 'by clear, strong, cogent and convincing evidence leaving no room for reasonable doubt of its existence.' " *Coleman v. Coleman*, 277 S.W.2d 866, 869[2] (Mo.App.1955) quoted in *Koeller, supra* at 623[7].

Appellant relies on *Daffin v. Daffin*, 567 S.W.2d 672 (Mo.App.1978) in which the court remanded the cause for a definite disposition of a pension asset and reconsideration of the maintenance award affected by the pension. The appeal was from a judgment in an action by the wife to set aside a dissolution decree only as it pertained to a separation agreement. There, equity intervened, not because of the deception that affected the substance of the court's judgment (concealment of the pension in the original dissolution), but because of the husband's breach of his wife's trust. The case stands for the proposition that the marital relationship entails highest trust and confidence and justifies reliance by a wife upon her husband's representations.

 In the case at bar, however, the trial court has resolved these questions of fact against appellant after hearing the testimony of both parties. No breach of trust was found. There is testimony in the record to support its ruling and the ruling is not against the weight of the evidence. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Daffin v. Daffin, supra*, is also distinguishable by the difference in the time element. In *Daffin* the wife brought the equity suit after a lapse of some months. Here the wife waited for more than three years before seeking to have the judgment set aside. This point is ruled against the wife.

The wife also urges that the decree should be set aside because respondent concealed her condition from the trial court. She contends that if the trial judge had been aware of her mental, physical and financial condition he would have found the separation agreement unconscionable. This argument is based on intrinsic fraud which is not reviewable in this action. *Daffin v. Daffin, supra* at 677[5–7]; *Martin v. Martin, supra; Hemphill v. Hemphill*, 316 S.W.2d 582, 586[5–7] (Mo.1958).

The disposition of appellant's first point relied on precludes an award for her legal expenses. *Fox v. Fox*, 312 S.W.2d 362, 363[3] (Mo.1958). The wife cites dictum which supports an award of attorney fees to a successful appellant in certain circumstances. *Burchett v. Burchett*, 572 S.W.2d 494, 504 (Mo.App.1978). But no authority was cited which would support such an award to an unsuccessful appellant or where these circumstances were not shown to exist. The judgment is affirmed.

CRIST, P. J., and REINHARD, J., concur.